**STATE of Minnesota, Respondent,**

v.

**Adolphus BROWN, Appellant.**

No. A07–0599.

Court of Appeals of Minnesota.

Dec. 16, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Theodora Gaïtas, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.[*]

## OPINION

LARKIN, Judge.

Appellant challenges his conviction for attempted second-degree murder, arguing that (1) the admission at trial of statements made by appellant at his omnibus hearing in response to a plea offer tendered by the state violated Minn. R. Evid. 410 and (2) the evidence was insufficient to support appellant's conviction. Appellant also raises a pro se claim regarding the prosecutor's failure to submit a lesser-included offense to the jury. We hold that statements made by a defendant that are not part of a guilty plea or an offer to plead guilty are admissible under Minn. R. Evid. 410 unless the defendant exhibited an actual subjective expectation to negotiate a plea when the statements were made and the expectation was reasonable given the totality of the objective circumstances.

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Because appellant did not exhibit an actual subjective expectation to negotiate a plea when he made his omnibus-hearing statements, we conclude that the district court did not err by admitting evidence of the statements at trial. We also conclude that the evidence was sufficient to support appellant's conviction and that appellant waived his pro se claim regarding lesser-included jury instructions. We therefore affirm.

## FACTS

Appellant Adolphus Brown previously resided with F.V. and her two children. M.L. is the biological father of one of the children, M. On June 14, 2006, M.L. went to appellant's residence to visit M. While M.L. and M. were visiting in the parking lot outside of appellant's residence, F.V. interrupted their visit and took M. and three other children to Jeannine's Foods. M.L. followed F.V. to Jeannine's Foods and tried to convince her to allow him to take M. F.V. refused and called appellant, who then drove to Jeannine's Foods.

Appellant entered Jeannine's Foods and encountered F.V., the children, and M.L. Appellant informed F.V. that he would be waiting outside. As appellant was leaving the store, M.L. pushed appellant out of the store and closed the door behind him. Appellant testified that M.L. had a knife, seemed out of control, smelled of alcohol, and spit as he spoke. Appellant re-entered the store and told F.V. to leave. Appellant and F.V. left the store with the children. M.L. followed. Once outside, M.L. grabbed M.'s arm. When M. began to protest, appellant embraced M., and M.L. released his grip.

Appellant and F.V. hurried to put the children in the back seat of appellant's vehicle. Appellant got in the driver's seat. F.V. was standing by the passenger side of the vehicle when M.L. opened the rear passenger door and began grabbing for the children and F.V. Appellant opened his locked glove compartment and retrieved a loaded revolver. Appellant testified that he exited the vehicle and yelled at M.L. to stop, but M.L. charged at him. Appellant fired at M.L. when M.L. was between six and eight feet away. Three shots penetrated M.L.'s abdomen, back, and arm.

### The Omnibus Hearing

The state charged appellant with attempted second-degree murder in violation of Minn.Stat. §§ 609.19, subd. 1(1) (intentional) and 609.17, subd. 1 (attempt) (2004) and possession of a pistol without a permit under Minn.Stat. § 624.714, subd. 1a (2004).

At appellant's omnibus hearing, the following exchange ensued:

THE COURT: Mr. Brown, you're charged with attempted murder, I believe.

PROSECUTOR: Attempted 2nd-degree murder, Your Honor, yes.

THE COURT: And we're here for a pretrial today. I've had the opportunity to talk this over in chambers and it's my understanding that the State has made an offer of—I can't remember what it was—one—

PROSECUTOR: Your Honor, 130 months—130.5 months, bottom of the box.

THE COURT: OK. And is there a response by the Defendant? Does he—

APPELLANT: If it please the Court, I would like to say they offered me something but how can I accept that for—for trying—trying to take care of my family, my kids and my wife? I don't understand that.

THE COURT: The allegation is that you took a pistol and put five bullets in somebody. That isn't—

APPELLANT: That's not true, though.

THE COURT: That isn't exactly taking care of my family.

APPELLANT: That's not true, though.

THE COURT: I wasn't there. That's the allegation, that somebody ended up with five bullets in them.

APPELLANT: Nobody did, Your Honor.

THE COURT: What? Was it five bullets or—

PROSECUTOR: It was five bullets. I believe three actually penetrated. One in the shoulder, one in the stomach, and one in the chest.

APPELLANT: He was on PCP and alcohol when he talked to my daughter and my wife. I—I had a permit for it. I mean I don't know what—What was I supposed to do?

THE COURT: Maybe you—your daughter and your wife could take a walk or call the police?

APPELLANT: That's what I tried to do when he attacked my car. That's what I tried to do.

THE COURT: Then go to trial and find out.

APPELLANT: Right. That's the way I feel.

THE COURT: That's apparently what their offer is. It's not something you're interested in, apparently.

APPELLANT: I'm just interested in the truth coming out. That's the only thing I'm interested in. I thought that's what everybody is interested in, the truth.

THE COURT: That's what we're interested in.

APPELLANT: I'm looking forward to the truth coming out. That's why we're going to trial.

DEFENSE COUNSEL: Yep.

THE COURT: All right. What's the likely exposure—presumptive?

PROSECUTOR: Presumptive is 153.

THE COURT: OK.

PROSECUTOR: Your Honor, State is withdrawing that offer at this time and will likely file a motion for an upward departure.

THE COURT: What?

PROSECUTOR: State is withdrawing the offer of 130.5 months and will likely file a motion for an upward departure.

APPELLANT: If it please the Court, Your Honor, I would like to say that it don't matter. There is no—Whatever ya'll gonna do, just do it. I mean like I had to do—like I had to make a choice to do what I felt I had to do so ya'll go to—

PROSECUTOR: You understand we're setting this matter for trial?

APPELLANT: Right.

Appellant pleaded "not guilty," and the matter was set for trial.

### The Jury Trial

■ At appellant's jury trial, appellant testified that he fired at M.L. to defend himself and others. On direct examination, appellant admitted that he did not have a permit for the gun. On cross-examination, the state questioned whether appellant recalled telling the district judge at the omnibus hearing that appellant had a permit for the gun. Following an objection by appellant's defense counsel, a discussion between the attorneys and the district judge occurred off the record, and then questioning on this issue resumed.[1]

---

1. We understand that off-record bench conferences often occur at trial. When this occurs we encourage the district court to make a record of the basis for any objection, the arguments, and the ruling so as to effectuate appellate review. *Cf. State v. Manthey,* 711

Appellant testified that he remembered telling the judge at the omnibus hearing that he had a permit to possess the gun. Appellant also testified that he thought he had applied for and received a permit. He admitted that he did not have a permit for the gun.

At the conclusion of the trial, the jury found appellant guilty of both charges. This appeal follows.

## ISSUES

I. **Did the admission of appellant's omnibus hearing statements at trial violate Minn. R. Evid. 410?**

II. **Was the evidence sufficient to support appellant's conviction for attempted second-degree murder?**

## ANALYSIS

I. **Did the admission of appellant's omnibus hearing statements at trial violate Minn. R. Evid. 410?**

■ Appellant claims that the district court erred by admitting evidence of his omnibus hearing statements regarding possession of a gun permit at trial because the statements were inadmissible under Minn. R. Evid. 410. The rule provides as follows:

> Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil, criminal, or administrative action, case, or proceeding whether offered for

or against the person who made the plea or offer.[2]

*See also* Minn. R.Crim. P. 15.06 (when a guilty plea is not accepted or withdrawn, evidence regarding the plea is inadmissible). By its terms, Rule 410 prohibits admission of evidence of (1) a plea of guilty, later withdrawn; (2) an offer to plead guilty; and (3) statements made in connection with a plea of guilty or offer to plead guilty.

Appellant did not plead guilty or expressly offer to plead guilty. But appellant argues that his omnibus hearing statements regarding possession of a gun permit were made in connection with an offer to plead guilty. Appellant claims the statements occurred during the type of "frank discussion in plea bargaining negotiations" contemplated by Rule 410. *State v. Blom,* 682 N.W.2d 578, 616–17 (Minn. 2004). In support of his claim, he notes that his statements followed the state's recitation of its plea offer and the district court judge's inquiry regarding his response, and that the state rescinded the plea offer after his statements. Appellant therefore contends that his statements were made in connection with a plea offer and were inadmissible. Minn. R. Evid. 410.

■ "Whether a statement is 'made in connection with' a plea or plea offer requires an inquiry as to the facts of each case." *Blom,* 682 N.W.2d at 616. Minn. R. Evid. 410 "gives a district court little discretion" to admit a statement that was made in connection with a plea offer. *Id.* We review the district court's "findings of fact under a clearly erroneous standard, but review de novo the court's legal conclu-

N.W.2d 498, 504 (Minn.2006) (noting that objections are "important to the creation of a record of the trial court's decision-making process in either admitting or excluding a given statement").

2. Minnesota does not recognize nolo contendere pleas. *See* Minn. R.Crim. P. 14.01 (listing the types of pleas permitted in Minnesota).

sion that Rule 410 does not protect" a particular statement. *Id.*; *see also State v. Peralta*, 598 N.W.2d 698, 700–01 (Minn. App.1999), *review denied* (Minn. Oct. 21, 1999) (concluding that because the district court's decision to suppress evidence did not turn on factual analysis but on the legal determination of whether or not Minn. R. Evid. 410 and Minn. R.Crim. P. 15.06 required exclusion of the statements, the standard of review is de novo).

■ When there is an express offer to plead guilty, Rule 410's mandates are apparent because subjective intent to plead guilty or negotiate a plea is obvious. *Cf. State v. Sha*, 292 Minn. 182, 183, 193 N.W.2d 829, 830 (1972) (applying the common-law rule excluding withdrawn pleas to a situation where defendant blurted out "I want to plead guilty, I want to get this over with" at his arraignment); *cf. also State v. Robledo–Kinney*, 615 N.W.2d 25, 28–30 (Minn.2000) (holding that a statement made to investigators after a tentative plea agreement was reached fell within the purview of Minn. R. Evid. 410 as "a statement made in connection with an offer to plead guilty"); *State v. Jackson*, 325 N.W.2d 819, 822 (Minn.1982) (holding that statements made to a presentence investigator following a plea, and then offered against defendant after the plea was withdrawn, were inadmissible under Rule 410). And we have declined to apply Rule 410's protections to statements that involved neither an offer to plead guilty nor a bargained confession. *See State v. McBride*, 357 N.W.2d 395, 396–97 (Minn.App.1984) (concluding that defendant's assertion to a police officer that he would give a statement if a "charge were dropped" was "neither a plea of guilty nor an offer to plead guilty" nor a "bargained confession" because defendant did not "indicate he [was] offering to plead guilty"). A more difficult situation arises when a defendant does not expressly offer to plead guilty, but makes statements in response to a plea offer tendered by the state, as is the case here.

We believe that the analysis adopted by the supreme court in *State v. Smallwood*, 594 N.W.2d 144 (Minn.1999), is useful in determining whether statements are inadmissible under Rule 410 in the absence of an express offer to plead guilty. In *Smallwood*, the supreme court was called upon to decide whether defendant's statement that he would offer to plead guilty in exchange for a guideline sentence was inadmissible under Rule 410 when the statement was made to a police officer rather than an attorney for the government. 594 N.W.2d at 151. To resolve this issue, the court adopted the analysis used by the Fifth Circuit to determine whether an offer to plead guilty to a police officer or other government agent is inadmissible under the federal companion to Rule 410. *Id.* at 152 (citing *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978)). Under this analysis, the court considers the totality of the circumstances, using a two-step process. *Id.* (citing *Robertson*, 582 F.2d at 1366). First, the court considers whether the defendant " 'exhibited an actual subjective expectation to negotiate a plea at the time of the discussion.' " *Id.* (quoting *Robertson*, 582 F.2d at 1366). Second, the court considers whether the " 'expectation was reasonable given the totality of the objective circumstances.' " *Id.* (quoting *Robertson*, 582 F.2d at 1366).

We acknowledge that this case is factually distinguishable from *Smallwood* in that appellant's statements were made in the presence of an attorney for the state. However, the *Smallwood* analysis goes to the crux of the issue here—whether appellant's statements were made in connection with an offer to plead guilty and therefore inadmissible under Rule 410. While we do not conclude that there must be an express

offer to plead guilty in order to determine that statements were made in connection with an offer to plead guilty, in the absence of an express offer to plead guilty we will examine a defendant's subjective expectation and whether that expectation was reasonable in order to determine whether statements were made in connection with an offer to plead guilty.

■ Appellant argues that when statements are made in a typical plea-bargaining context (i.e., in the presence of a prosecutor and defense attorney) and in response to a formal plea offer, the expectation to negotiate a plea is inherent. Thus, appellant argues, there is no need to apply any particular test to determine whether appellant's statements were made in connection with an offer to plead guilty. We disagree. The fact that appellant's statements were made in response to a plea offer tendered by the state is not dispositive. The policy underlying Rule 410 does not support exclusion of every statement made in response to a tendered plea offer, or in a typical plea-negotiation context, without regard to the defendant's subjective expectation. The policy is as follows:

> In general, we recognize that plea bargains are essential to the administration of justice. With proper safeguards, pleas should be a most frequent means for the disposition of criminal cases. The purpose of Rule 410 is to encourage frank discussion in plea bargaining negotiations. In order to further this policy and ensure fruitful negotiations, Rule 410 safeguards the confidentiality of plea negotiations by precluding the evidentiary use of plea-related statements in the

event that plea negotiations abort. Meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence.

682 N.W.2d at 616–17 (citations and quotations omitted).

■ The policy favors the use of plea bargaining to dispose of criminal cases. The policy protects statements made during plea negotiations in an effort to encourage the disposition of criminal cases via guilty pleas. Cases are not disposed of through plea bargaining unless the defendant offers to plead guilty or at the very least exhibits an actual subjective expectation to negotiate a plea. Thus, the policy is not served by extending Rule 410's protections to statements made by a defendant who did not exhibit an actual subjective expectation to negotiate a plea when the statements were made.

■ Turning to appellant's statements, appellant argues that his exchange with the judge amounted to a plea negotiation because he was attempting to negotiate a new plea offer with the judge. Of course, the court is not permitted to enter plea negotiations.[3] *State v. Anyanwu,* 681 N.W.2d 411, 415 (Minn.App.2004). Regardless, appellant's exchange with the judge was not a plea negotiation. " 'Plea bargaining implies an offer to plead guilty upon condition.' " *Smallwood,* 594 N.W.2d at 153 (quoting *United States v. Levy,* 578 F.2d 896, 901 (2d Cir.1978)). A plea bargain involves " 'a concession for a concession, a *quid pro quo.*' " *Id.* (quoting *Robertson,* 582 F.2d at 1366).

---

**3.** We discourage district court judges from engaging in unnecessary dialogue with defendants regarding their reasons for rejecting a plea offer because such dialogue may result in the court's impermissible entry into plea negotiations. "Anytime a district court improperly injects itself into plea negotiations the guilty plea is per se invalid." *Anyanwu,* 681 N.W.2d at 415.

Appellant never expressed an intent or willingness to plead guilty in exchange for a concession. Appellant said nothing to indicate that he wanted to plead guilty on other terms. Instead, appellant explained the reasons why he had rejected the plea offer and why he believed that he was not guilty. Appellant also stated that he wanted to go to trial. Given these facts, we conclude that appellant did not exhibit an actual subjective expectation to negotiate a plea when he responded to the state's tendered plea offer. Thus, our *Smallwood* analysis ends here.

Because appellant did not exhibit an actual subjective expectation to negotiate a plea when he made statements in response to the state's tendered plea offer, we conclude that the statements were not made in connection with an offer to plead guilty and that Rule 410 did not prohibit admission of the statements at trial.

## II. Was the evidence sufficient to support appellant's conviction for attempted second-degree murder?

When considering whether the evidence was sufficient to support a conviction, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004).

Appellant argues that the state did not prove beyond a reasonable doubt that he intended to effect the death of a person. The state was required to prove that appellant acted "with intent to effect [ ] death." Minn.Stat. § 609.19, subd. 1(1). "With intent" means "that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2004). The "[d]etermination of intent is a question for the jury to decide." *State v. Edge*, 422 N.W.2d 315, 318 (Minn.App.1988), *review denied* (Minn. June 21, 1988). Intent is a state of mind "generally proved circumstantially—by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997). Direct evidence of intent is almost never available because of the subjective nature of this element of a crime. *State v. Bouwman*, 328 N.W.2d 703, 705 (Minn.1982). But in determining intent, jurors use an objective standard and rely on their sensory perceptions, life experiences, and common sense to determine if the defendant formed the specific intent to do what he did. *Id.*

Having reviewed the record, we conclude there was sufficient evidence for the jury to find appellant guilty beyond a reasonable doubt of attempted murder in the second degree. Appellant admitted that he opened his locked glove compartment, retrieved a loaded gun, exited his vehicle and fired multiple shots at M.L. The evidence showed that M.L. was between six and eight feet away from appellant, and he was struck in the abdomen, back, and arm. The jury could have rea-

sonably rejected appellant's explanation for his actions and found that appellant intended to cause M.L.'s death. *See State v. Whisonant,* 331 N.W.2d 766, 768 (Minn. 1983) (finding sufficient evidence of intent to kill where defendant fired a single shot at a police officer from 12 feet away); *State v. Oates,* 611 N.W.2d 580, 587 (Minn. App.2000) (finding sufficient evidence of intent to kill where defendant fired up to seven shots, in close quarters in a crowded bar, after putting a gun to the head of the intended victim), *review denied* (Minn. Aug. 22, 2000); *State v. Chuon,* 596 N.W.2d 267, 271 (Minn.App.1999) (finding sufficient evidence of intent to kill where defendant fired at victim, striking him in the shoulder blade, from a distance of about six to eight feet), *review denied* (Minn. Aug. 25, 1999); *see also State v. Thompson,* 544 N.W.2d 8, 12 (Minn.1996) (noting the court "has allowed intent to kill to be shown by a single gunshot fired at close range"); *State v. Bryant,* 281 N.W.2d 712, 714 (Minn.1979) (finding sufficient evidence of intent to kill where "defendant fired three shots, the last two at close range and with the gun pointed at the victim").

Appellant argues that *State v. Gilbert,* 448 N.W.2d 875 (Minn.1989) and *State v. Burton,* 507 N.W.2d 842 (Minn.1993) support the proposition that a reviewing court must look beyond conduct alone and see evidence of appellant's purpose to kill or belief that appellant's actions will result in death. We disagree. Neither of the cited cases involved analysis of the quantum or type of evidence necessary to prove intent to kill. Rather, the supreme court simply affirmed the second-degree intentional-murder convictions in both cases, but reduced the sentences in the interest of justice. *Gilbert,* 448 N.W.2d at 876; *Burton,* 507 N.W.2d at 842.

Having viewed the evidence in a light most favorable to the verdict we conclude that there was sufficient evidence to support appellant's conviction of attempted second-degree murder beyond a reasonable doubt.

### III. Appellant's pro se arguments.

Appellant argues within his pro se supplemental brief that the prosecutor erred by failing to submit a lesser-included offense to the jury. Pro se litigants are held to the same standards as attorneys. *State v. Seifert,* 423 N.W.2d 368, 372 (Minn.1988), *superseded by rule on other grounds,* Minn. R.Crim. P. 28.02, subd. 5(17–19), *as recognized in Black v. State,* 560 N.W.2d 83, 86 (Minn.1997); *Liptak v. State ex rel. City of New Hope,* 340 N.W.2d 366, 367 (Minn.App.1983). Appellant's pro se brief includes neither an argument in support of his position nor citation to legal authority. Therefore appellant's pro se claim is waived. *State v. Krosch,* 642 N.W.2d 713, 719–20 (Minn. 2002). Appellant's second pro se argument concerns the jury's findings and was addressed in the context of appellant's sufficiency of the evidence claim.

### DECISION

Because the district court did not err by admitting at trial statements that appellant made in response to the state's tendered plea offer and because the evidence was sufficient to support appellant's conviction for attempted murder in the second degree, we affirm appellant's conviction. We do not reach appellant's pro se argument regarding submission of a lesser-included offense to the jury because we deem the argument waived.

**Affirmed.**